IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| ILDA S. GONZALES, | ) | CASE NO. 3:10CV02880 |
| | ) | |
| Plaintiff, | ) | MAGISTRATE JUDGE |
| | ) | KATHLEEN B. BURKE |
| v. | ) | |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | **MEMORANDUM OPINION & ORDER** |
| Defendant. | ) | |

Plaintiff Ilda S. Gonzales ("Gonzales") seeks judicial review of the final decision of
Defendant Commissioner of Social Security ("Commissioner") denying her application for
Disability Insurance Benefits ("DIB") under Title II of the Social Security Act. Doc. 1; 42 U.S.C.
§ 405(g).  This case is before the undersigned Magistrate Judge pursuant to the consent of the
parties. Doc. 17.  Gonzales' principal argument  is that the Administrative Law Judge erred by
failing to find that her mental impairments met or equaled Listing 12.05, which pertains to
mental retardation.[1]  For the following reasons, the Court AFFIRMS the final decision of the
Commissioner.

## I.  Procedural History

On August 31, 2006, Gonzales filed an application for DIB, alleging a disability onset
date of May 8, 2005.[2]  Tr. 12, 29, 56-57, 129.  Gonzales claimed that she was disabled due to
chronic back pain, degenerative disc disease and depression.  Tr. 58, 72.  The state agency

---

[1] The Listing of Impairments (commonly referred to as Listing or Listings) is found in 20 C.F.R. pt. 404, Subpt. P,
App. 1, and describes impairments for each of the major body systems that the Social Security Administration
considers to be severe enough to prevent an individual from doing any gainful activity, regardless of his or her age,
education, or work experience.  20 C.F.R. § 404.1525.

[2] Gonzales' date last insured under the Social Security Act was December 31, 2010. Tr. 14. To be entitled to DIB,
Gonzales must establish that she was disabled prior to her date last insured.  20 C.F.R. § 404.315(a)(1); *see also Key
v. Callahan*, 109 F.3d 270, 274 (6th Cir. 1997).

denied Gonzales' claim initially on December 13, 2006 (Tr. 56), and on reconsideration on August 15, 2007.  Tr. 57.   Gonzales requested a hearing (Tr. 79-80) and, on October 27, 2009, a hearing was held before Administrative Law Judge John R. Allen (the "ALJ").  Tr. 27-55.  In a decision dated January 13, 2010, the ALJ determined that Gonzales was not disabled or entitled to benefits.  Tr. 9-26.  On January 22, 2012, Gonzales requested review of the ALJ's decision by the Appeals Council.  Tr. 6-8.  On November 16, 2010, the Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner.  Tr. 1-5.

## II. Evidence

### A.      Personal and Vocational Evidence

Gonzales was born on January 26, 1961, and was 48 years old at the time of the hearing. Tr. 32.  She is married with children.  Tr. 32, 45.  She completed the 10th grade. Tr. 33. Gonzales was employed for eighteen (18) years, until 2005, at P&A Industries, Inc.,[3] an automobile parts factory.  Tr. 34-38, 112-118.  Gonzales stopped working due to back problems. Tr. 37-38, 425.  While employed at P&A Industries, Inc. Gonzales worked as an assembler, welding machine operator and press operator.[4]  Tr. 35-37.   Gonzales never learned how to drive; she uses a taxi for transportation.  Tr. 228.

---

[3] The hearing transcript indicates that Gonzales' employer was BNA (Tr. 34), however, the Office of Quality Performance Work History Assistant Tool generated by the SSA shows that Gonzales' employer was P&A Industries, Inc. (Tr. 112-118) and a Background Questionnaire completed by Gonzales on May 29, 2009, indicates that she was employed by P&A Industries.  Tr. 237-239.

[4] Carl Hartong, the vocational expert ("VE") indicated that the three jobs performed by Gonzales are classified as unskilled, medium exertional level.  Tr. 50.

**B.      Medical Evidence -- IQ tests and Examining and Reviewing Physicians[5]**

**1.      Findlay Public School Records – 1970 and 1975**

In November 1970, when Gonzales was nine years old and in the third grade, she was administered the California Mental Maturing Test.  Tr. 236.  Gonzales' Findlay Public School records indicate that her IQ test scores were: Verbal IQ – 82, Non-Verbal IQ – 72 and Total IQ – 75.  Tr. 236.  These scores were above the range associated with mild mental retardation.[6]

In 1975, when Gonzalez was in the eighth grade, IQ tests were attempted for the purpose of determining whether or not she would be eligible for an E.M.R. class.[7]  Tr. 396.  Gonzales requested the testing because her brother was in the E.M.R. class and she thought she would like to attend.  Tr. 396.  Gonzales' Findlay Public School records include a November 26, 1975, report from psychologist Robert A. Magoon indicating that he attempted to administer the Wechsler Intelligence Scale for Children but Gonzales did not respond to the verbal sections of the test and there was limited success achieved in the non-verbal sections of the test.  Tr. 396.  As an alternative, the Leiter International Performance Scale ("Leiter test") was administrated because the Leiter test did not require oral responses.  Tr. 396.  Dr. Magoon indicated that the Leiter test attempts to measure intelligence through perception of forms and concepts and utilizes only manipulation of blocks.  Tr. 396.  Gonzales scored a mental age of 6 years, 9 months on the Leiter test which converted to an IQ of 45.  Tr. 396.  That score is associated with mental

---

[5] The arguments Gonzales makes in her brief relate solely to her mental impairments.  Doc. 12 at 1-2.  Therefore, the Court's review is focused on those impairments.

[6] Mild mental retardation is associated with an IQ in the range of 50-55 to approximately 70. *See* American Psychiatric Association: *Diagnostic & Statistical Manual of Mental Health Disorders*, Fourth Edition, Text Revision.  Washington, DC, American Psychiatric Association, 2000 ("DSM-IV-TR"), at 41.

[7] Gonzales does not explain what the acronym E.M.R. stands for and, as noted by the Commissioner, her school records do not indicate what the acronym stands for.  Doc. 15 at 2, FN 2; Tr. 396.  The Commissioner has assumed that it is some type of program for mentally retarded children.  Doc. 15 at 2, FN 2.

retardation.  However, Dr. Magoon opined that he did not feel that the test was indicative of Gonzales' potential in daily life and he also found that she was cooperative and got along well in her family and in life out of school.  Tr. 396.  Dr. Magoon stated that the Leiter test score should only be used to indicate that she qualified for the State Standards for the E.M.R. program.  Tr. 396.  Dr. Magoon concluded that, if it was Gonzales' wish to attend the E.M.R. class, she should be permitted to do so provided that her parents consented.  Tr. 396.  Gonzales agrees with Dr. Magoon's assessment that the 1975 test score is invalid.  In her brief, she concedes that the test result is "an underestimate" of her IQ.  Doc. 12 at 8.

### 2. Consultative Examining Psychologist James N. Spindler's Evaluation - November 18, 2006

On November 18, 2006, Consulting Examining Psychologist James N. Spindler evaluated Gonzales and administered the Wechsler Adult Intelligence Scale – III ("WAIS – III) IQ test. Tr. 400-407.  The IQ test results were: Verbal IQ – 67, Performance IQ – 81, Full Scale IQ – 72. Tr. 407.  Only the Verbal score was within the range associated with mild mental retardation. Dr. Spindler noted that there was a significant difference between that score and Gonzales' Performance IQ score of 81 and he opined that the discrepancy may suggest that Gonzales will learn new skills more effectively by being shown how to do the job rather than by reading, or being told, how to do the job.  Tr. 405.  Dr. Spindler diagnosed Gonzales with borderline intellectual functioning[8], not mental retardation. Tr. 405, 407.  He assessed a GAF score of 60.[9] Tr. 405.

---

[8] Borderline intellectual functioning is associated with an IQ in the 71-84 range.  DSM-IV-TR at 740.

[9] GAF considers psychological, social and occupational functioning on a hypothetical continuum of mental health illnesses.  *Id.* at 34.  A GAF score between 51 and 60 indicates moderate symptoms or moderate difficulty in social, occupational, or school functioning.  *Id.*

Dr. Spindler opined that Gonzales has mild to moderate impairments in her ability to: relate to others, including fellow workers and supervisors; understand, remember, and follow instructions; maintain attention, concentration, persistence and pace; and withstand stress and pressure associated with day-to-day work activities.  Tr. 406.   Dr. Spindler also indicated that Gonzales reported getting along with supervisors and co-workers and always receiving good job performance ratings when she was employed.  Tr. 406.  Also, Dr. Spindler noted that, during the evaluation, Gonzales was able to follow instructions and had no problem recalling background information.  Tr. 406.

### 3.    State Agency Reviewing Physician Caroline Lewin, Ph.D. – December 11, 2006

On December 11, 2006, state agency reviewing physician Caroline Lewin, Ph. D. completed a Psychiatric Review Technique and Mental RFC.  Tr. 409-426.  Dr. Lewin noted that Gonzales alleged that she stopped working because she could no longer handle her back pain, not because of any mental problem.  Tr. 425.  Dr. Lewin opined that Gonzales had borderline intellectual functioning and that her impairment did not satisfy the diagnostic criteria under Listing 12.05.  Tr. 409.  In reaching this opinion, Dr. Lewin reviewed and considered the 2006 IQ test results which included a Verbal IQ of 67. Tr. 409.  Further, Dr. Lewin opined that Gonzales had only mild limitations in the areas of activities of daily living, maintaining social functioning, and maintaining concentration, persistence and pace.  Tr. 419.  Dr. Lewin found no episodes of decompensation, each of an extended duration.  Tr. 419.

In her Mental RFC, Dr. Lewin opined that Gonzales had no significant limitations in the broad area of social interaction.  Tr. 424.  Dr. Lewin also opined that Gonzales generally had no significant limitations in the broad areas of: understanding and memory; sustained concentration and persistence; and adaptation, although she was moderately limited in certain sub-categories

5

within those broad areas.[10]  Tr. 423-424.  In addition, Dr. Lewin opined that Gonzales "should be able to cope with a low stress work setting involving simple two-step instructions on which concentration needed is only short term and intense socialization is not required."  Tr. 425.

**C.    Testimonial Evidence**

**1.    Gonzales' Testimony**

Gonzales testified at the administrative hearing with counsel present.  Tr. 29-49.  She described the jobs she performed at P&A Industries as an assembler, welding machine operator, and press operator.  She stated that she left that job due to her back problems.  Tr. 34-39.  She did not attempt to find lighter work thereafter.  Tr. 38-39.

Gonzales testified regarding her back problems**,** the pain that she has experienced, and the medical treatment she has received for her back problems.  Tr. 37-48.  Gonzales testified that she struggles with reading but she can accurately count change.  Tr. 33.  During the day she visits with family, watches movies, does thousand-piece jigsaw puzzles, attends Bingo and eats out occasionally.  Tr. 45-46.  She can dress herself.  Tr.  46.  She has difficulty sleeping at night.  Tr. 47-48.  She cannot provide a lot of assistance with chores at home but she can do light dusting, make the beds, and fold clothes.  Tr. 44-45.  She gets along with others when they visit with her.  Tr. 49.

**2.    Vocational Expert's Testimony**

VE Carl Hartong testified at the hearing.  Tr. 49-54.  The ALJ asked the VE whether there were jobs regionally or nationally for an individual of the same age, education and work

---

[10] The sub-categories in which Dr. Lewin indicated that Gonzales was moderately limited were: u*nderstanding and memory* - ability to understand and remember detailed instructions; *sustained concentration and persistence* - ability to carry out detailed instructions, ability to maintain attention and concentration for extended periods and ability to complete a normal work day and work week without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; and *adaptation* - ability to respond appropriately to changes in the work setting.  Tr. 423-424.

6

experience as Gonzales and with an RFC of: sedentary work, having to change positions every 45-60 minutes,[11] but could stay on task; limited to tasks that are not fast-paced, strict time limited or with high production quotas; could work in proximity to coworkers, but would probably do best working alone and would be able to accommodate occasional changes in work setting or assignment.  Tr. 50-52.  Based on the foregoing hypothetical, the VE testified that the following jobs would be available to such an individual: telemarketer, inspector/sorter and assembler of small products.[12]  Tr. 52.   Claimant's counsel's questions to the VE related to physical limitations (i.e., bending, twisting and turning), not to mental limitations.  Tr. 53-54.

### III. Standard for Disability

Under the Act, 42 U.S.C § 423(a), eligibility for benefit payments depends on the existence of a disability.  "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  Furthermore:

> [A]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . .

42 U.S.C. § 423(d)(2).   In making a determination as to disability under this definition, an ALJ is required to follow a five-step sequential analysis set out in agency regulations.  The five steps can be summarized as follows:

---

[11] At the VE's request, the ALJ clarified that the time needed to change positions would be just a few minutes.  Tr. 52.

[12] The VE provided the ALJ with the number of those jobs available at both the regional and state levels.  Tr. 52-53.

1.  If the claimant is doing substantial gainful activity, he is not disabled.

2.  If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.

3.  If claimant is not doing substantial gainful activity, is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.

4.  If the impairment does not meet or equal a listed impairment, the ALJ must assess the claimant's residual functional capacity and use it to determine if claimant's impairment prevents him from doing past relevant work.  If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.

5.  If claimant is unable to perform past relevant work, he is not disabled if, based on his vocational factors and residual functional capacity, he is capable of performing other work that exists in significant numbers in the national economy.

20 C.F.R. §§ 404.1520; *see also Bowen v. Yuckert*, 482 U.S. 137, 140-42, 96 L. Ed. 2d 119, 107 S. Ct. 2287 (1987).  Under this analysis, the claimant has the burden of proof at Steps One through Four.  *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997).  The burden shifts to the Commissioner at Step Five to establish whether the claimant has the residual functional capacity ("RFC") and vocational factors to perform work available in the national economy.  *Id.*

## IV. The ALJ's Decision

In his January 13, 2010 decision, the ALJ found that:

1.  Gonzales met the insured status requirements through December 31, 2010.  Tr.14.

2.  Gonzales had not engaged in substantial gainful activity since May 8, 2005, the alleged onset date.  Tr. 14.

3.  Gonzales has the following severe impairments: degenerative disc disease and borderline intellectual functioning. Tr. 14.

4.  Gonzales does not have an impairment or combination of impairments that meets

8

or medically equals one of the listed impairments. Tr. 15-16.  The ALJ specifically considered Listing 12.05 and determined that the record did not support a finding that Gonzales' impairment or combination of impairments met Listing 12.05.  Tr. 15-16.

5.   Gonzales has the RFC to perform sedentary work, except that she would need to change position every 45-60 minutes; however, she could stay on task.  Gonzales is further precluded from fast-paced, strict time-limited or high production quota tasks; and could work in close proximity to co-workers, but would do best working alone and could tolerate occasional changes in work setting or assignment.  Tr. 16-19.

6.   Gonzales is unable to perform any past relevant work.  Tr. 19-20.

7.   Considering Gonzales' age, education, work experience and RFC, there are jobs that exist in significant numbers in the national economy that she can perform, specifically, telemarketer, inspector/sorter, and assembler-small parts.  Tr. 20-21.

8.   Gonzales has not been under a disability from May 8, 2005, through the date of the decision.  Tr. 21.

## V.  Arguments of the Parties

### A.   Plaintiff's Arguments

Gonzales argues that the Administrative Law Judge erred by not finding that her mental impairments met or equaled Listing12.05, specifically Listing 12.05C.[13]  She asserts that the ALJ disregarded deficits reflected in her school records that establish the onset of mild mental retardation before age 22.  Doc. 12 at 1-2, 6-10.  Gonzalez also asserts that the ALJ erred by failing to incorporate in his determination as to her Residual Functional Capacity ("RFC") additional limitations to "simple oral instructions" to be carried out "under somewhat closer supervision than required of an individual with a higher IQ," limitations that are set forth in Social Security Ruling 85-16.  Doc. 12 at 1-2, 10.

---

[13] The Commissioner correctly points out that Gonzales only argues that her impairment satisfies Listing 12.05C, not Listing 12.05A, B or D.  Doc. 15 at 7.  However, the ALJ considered all four Subparts of Listing 12.05, A through D.  Tr. 15-16.

**B.     Defendant's Arguments**

The Commissioner argues that the ALJ's finding that Gonzales' impairment or combination of impairments does not meet or equal Listing 12.05 is supported by substantial evidence. Doc. 15 at 6-11. More particularly, the Commissioner argues that Gonzales failed to establish that she met the diagnostic description for Listing 12.05C. Doc. 15 at 7. In support of his argument, the Commissioner points to the fact that no medical source diagnosed Gonzales with mental retardation; Gonzales failed to present evidence showing she experienced deficits in adaptive functioning; and substantial evidence supports the ALJ's finding that she did not have significantly subaverage general intellectual functioning with deficits in adaptive functioning before age 22. Doc. 15 at 7- 11. The Commissioner argues that Gonzales has not pointed to any evidence indicating that she required "enhanced supervision" and, further, even if she were limited to work involving "simple instructions," she has not demonstrated how she would be unable to perform the inspector/sorter and assembler-small parts jobs the VE testified about. Doc. 15 at 11.

## VI. Law & Analysis

A reviewing court must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record. 42 U.S.C. § 405(g); *Wright v. Massanari*, 321 F.3d 611, 614 (6th Cir. 2003). "Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Besaw v. Sec'y of Health & Human Servs.*, 966 F.2d 1028, 1030 (6th Cir. 1992). The Commissioner's findings "as to any fact if supported by substantial evidence shall be conclusive." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir.

2006) (citing 42 U.S.C. § 405(g)).  Even if substantial evidence or indeed a preponderance of the

evidence supports a claimant's position, a reviewing court cannot overturn "so long as

substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc.*

*Sec.*, 336 F.3d 469, 477 (6th Cir. 2003).  Accordingly, a court "may not try the case *de novo*, nor

resolve conflicts in evidence, nor decide questions of credibility." *Garner v. Heckler*, 745 F.2d

383, 387 (6th Cir. 1984).

A.     **The ALJ's finding that Gonzales' impairment or combination of impairments did
       not satisfy Listing 12.05C is supported by substantial evidence.**

       Listing 12.05 relates to mental retardation. To qualify as disabled under that Listing, a

claimant needs to satisfy <u>both</u> the diagnostic description in the introductory paragraph of the

Listing 12.05 <u>and</u> one of the four sets of criteria found in Subparts A through D.  20 C.F.R. §

404.1525(c)(3); *Foster v. Halter*, 279 F.3d 348, 354-55 (6th Cir. 2001).  The diagnostic

description is as follows:

> Mental retardation refers to significantly subaverage general intellectual
> functioning with deficits in adaptive functioning initially manifested during the
> developmental period; i.e., the evidence demonstrates or supports onset of the
> impairment before age 22.

The additional Subpart C criteria are:

> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or
> other mental impairment imposing an additional and significant work-related
> limitation of function.

20 C.F.R. Part 404, Subpt. P, App. 1, Listing §12.05C (emphasis added).

       In order to satisfy the diagnostic description, a claimant must prove that she meets three

factors: "(1) subaverage intellectual functioning; (2) onset before age twenty-two; and (3)

adaptive-skills limitations." *Hayes v. Comm'r of Soc. Sec.*, 357 F. Appx. 672, 675 (6th Cir. 2009).

Gonzales fails to point to evidence in the record that satisfies all three factors.  Moreover, there is

substantial evidence in the record to support the ALJ's conclusion that she does not meet the three factors.

No medical source diagnosed Gonzales as mentally retarded. She was diagnosed with borderline intellectually functioning, which is a separate and distinct impairment. Tr. 404-405, 413. Although Listing 12.05 does not specifically require a diagnosis of mental retardation, a diagnosis of borderline intellectual functioning is relevant in determining whether a claimant satisfies the diagnostic criteria under Listing 12.05. *See Cooper v. Comm'r of Soc. Sec.*, 217 Fed Appx. 450, * 452 (6th Cir. 2007) (drawing a distinction between a diagnosis of mental retardation and one of borderline intellectual functioning); *West v. Comm'r Soc. Sec,* 240 Fed. Appx. 692, 698–699 (6th Cir.2007) (suggesting that a diagnosis of borderline intellectual functioning is relevant when determining whether a claimant has shown deficits in adaptive functioning). The ALJ acknowledged Gonzales' 2006 Verbal IQ score of 67 but went on to find, as did both Dr. Spindler and Dr. Lewin, that she suffered from borderline intellectual functioning, not mental retardation. Tr. 14-16, 404-405, 413. Further, the ALJ determined that the record does not support a finding that Gonzales had significant limitations prior to age 22, limitations that are required to meet the diagnostic description of Listing 12.05. Tr. 16.

To support her argument that she satisfies the diagnostic description of Listing 12.05, Gonzales relies on the fact that, in 1975, she was placed in an E.M.R. class. Doc. 12 at 8. However, Dr. Magoon opined in his 1975 report that the Leiter test IQ score of 45 was not indicative of Gonzales' potential in daily life and he also found Gonzales to be "a pleasant, cooperative girl, who gets along well in her family, and in life out of school." Tr. 396. Gonzales concedes in her brief that the 1975 test score was invalid. Doc. 12 at 8. Dr. Magoon's report suggests that his ultimate conclusion that she be permitted to attend the EMR class was based in

12

large part on Gonzales' own desire to attend the class.  Tr. 396.  Specifically, Dr. Magoon stated "[i]t is suggested that Ilda be permitted to attend the E.M.R. class at Central if that is her wish, and if her parents consent."  Tr. 396.  The 1975 testing was not done at the request of a medical or educational provider but was conducted because Gonzales wanted to qualify for the E.M.R. class that her brother was attending.  Tr. 396.  This evidence, coupled with Gonzales' later full scale and performance IQ scores of 72 and 81, respectively, undercut her argument that she exhibited significantly subaverage intellectual functioning with deficits in adaptive functioning.

Even if it is assumed that the E.M.R. classes were part of a mental retardation program[14] and that Gonzales' participation in the EMR program is evidence of deficits in adaptive functioning or significant subaverage intellectual functioning, this Court may not overturn the Commissioner's decision because there is substantial evidence supporting the ALJ's conclusion that Gonzales is well adapted and clearly not mentally retarded.  *See  Jones*, 336 F.3d at 477 (where substantial evidence supports an ALJ's decision, it shall be affirmed even if substantial evidence also supports the claimant's position).  Gonzales was employed for 18 years by the same employer, P&A Industries, Inc.  Tr. 34-38.  There is no indication that she had to stop working because she was mentally unable to perform the functions of the three different jobs she performed while at P&A Industries, Inc.   Gonzales testified that she stopped working due to her back problems.  Tr. 37-38.  Dr. Spindler stated that Gonzales reported getting along with supervisors and co-workers and always receiving good job performance ratings while employed.  Tr. 406.  Upon consideration of Dr. Spindler's report and opinions, the ALJ reached his conclusion that Gonzales suffered from borderline intellectual functioning rather than from mental retardation.  Tr.  15.

The ALJ also gave some weight to state agency reviewing physician Dr. Lewin's

---

[14] See FN 7 above.

opinions.  Tr. 19.  In her opinion, Dr. Lewin noted that Gonzales alleged that she stopped

working because she could no longer handle her back pain and not because of any limitation

resulting from a mental impairment.  Tr. 425.  Dr. Lewin's report also indicates that Gonzales

got her children ready for school, did light household chores, played bingo, had a few friends she

interacted with, and visited her mother on most weekends.  Tr. 425.  Additionally, Gonzales

testified that she watches television and movies and works on thousand-piece jigsaw puzzles.  Tr.

45-46.  When assessing Gonzales' mental RFC in the area of adaptation, Dr. Lewin found only

one  moderate limitation, i.e., the ability to respond appropriately to changes in the work setting.

Tr. 424.  The RFC established by the ALJ takes this moderate limitation into account, i.e., the

RFC includes a limitation that claimant is precluded from fast-paced, strict time limited or high

production quota tasks and also claimant can tolerate occasional changes in the work setting or

assignment.  Tr. 16-17.

Gonzales appears to contend that the ALJ's decision is flawed because he did not rely on

her lowest IQ score.  Doc. 12 at 6-9.  Gonzales argues that there is a lack of consistency among

psychologists as to which IQ score to use when there is more than one to choose from.  However,

Gonzales does not specifically identify how the ALJ improperly considered the various IQ

scores.  Doc. 12 at 7.  Gonzales concedes that the 1975 IQ score of 45 was "an underestimate" of

her IQ and disclaims any reliance on that score by stating that "it was not the invalid scores that

were significant."  Doc. 12 at 8.  The only other score that was within the range associated with

mild mental retardation was her 2006 Verbal IQ score of 67.  The ALJ acknowledged that score.

His finding that she did not meet or equal Listing 12.05C was based not on ignoring that score

but on his conclusion that she did not meet "the requirements of significant limitations prior to

age 22."  Tr. 16.  It is not the Court's function to search the administrative record for evidence to

support a party's argument.  *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.  It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to put flesh on its bones.").  Accordingly, inasmuch as Gonzales has failed to fully articulate why the ALJ's decision should be reversed or remanded because of a failure to consider or utilize the lowest IQ score, any argument relating to a failure to consider the lowest IQ score is deemed waived.

Finally, Gonzales asserts that the ALJ's decision with respect to Listing 12.05C is somehow flawed because the ALJ found unpersuasive her arguments that actual pre-age 22 test scores are not required and that a diagnosis of mental retardation may be inferred. Doc. 12 at 5-5; Tr. 18.  While the ALJ did indicate that he found certain of Gonzalez's arguments to be unpersuasive, that does not in itself demonstrate that the ALJ's decision is not based on substantial evidence, nor does it constitute grounds for a reversal or remand.

Based on the foregoing, Gonzales' arguments relative to the ALJ's finding under Listing 12.05C are without merit.

**B.    The ALJ's RFC finding is supported by substantial evidence.**

Gonzales relies on SSR 85-16, *Residual Functional Capacity for Mental Impairments*, to argue that the ALJ's RFC is flawed because the ALJ should have limited Gonzales to jobs that required only "simple instructions" under "enhanced supervision."  Doc. 12 at 10.  Gonzales' argument is without merit.  SSR 85-16 does not mandate the work-related limitations that Gonzales seeks.  Rather, it indicates that "an individual, in whom the *only finding* in intellectual testing is an IQ between 60 and 69, is *ordinarily* expected to be able to understand simple oral instructions and to be able to carry out these instructions under somewhat closer supervision than

15

required of an individual with a higher IQ."  *See* SSR 85-16; s*ee also Delp v. Comm'r of Soc. Sec.*, 2010 WL 3672330, *4 (S.D. Ohio Sept. 16, 2010)(highlighting the fact that the portions of SSR 85-16 relating to increased supervision refer to "an individual in whom the *only finding* in intellectual testing is an IQ between 60 and 69")(emphasis added in original, internal quotations omitted); *see also Norah v. Comm'r of Soc. Sec.*, 2012 WL 469889 (S.D. Ohio Feb. 12, 2012)(U.S. Magistrate Judge Report and Recommendation)(citing *Delp* for the proposition that Ruling 85-16 does not compel the conclusion that all claimants with an IQ score between 60 and 69 receive RFC limitations of oral instruction and close supervision).  Gonzales did have a Verbal IQ test score of 67 in 2006[15] but, in the same test, she had scores of 81 (Performance) and 72 (Full Scale) (Tr. 407) and, in 1970, she had IQ scores of 82 (Verbal), 72 (Non-Verbal) and 75 (Total).  Tr. 236.  Accordingly, Gonzales' argument that the ALJ was required to include limitations of "simple instructions" and "enhanced supervision" because she had one IQ score within the range of 60 to 69 is without merit.

Additionally, in determining an RFC for mental impairments, SSR 85-16 indicates that evidence including but not limited to medical history, observations of medical sources, descriptions or reports of an individual's daily activities should be considered.  *See* SSR 85-16; *Delp*, 2010 WL 3672330, *4.  In reaching his decision, the ALJ considered evidence including but not limited to Gonzales' medical history, her daily activities, and observations of medical sources.  Tr. 14-19.

---

[15] Gonzales asserts that, while she is able to read up to the sixth grade level, she is capable only of jobs that require "simple instructions" under "enhanced supervision."  Doc. 12 at 10.  Gonzales fails to indicate what evidence supports such limitations.  It is insufficient for a claimant to simply assert arguments without reference to medical and other evidence. *See* 20 C.F.R. § 404.1512(a) (a claimant must provide medical and other evidence that can be used by the Commissioner to reach conclusions about medical impairments and their effect on the claimant's ability to work.); *See also Walters,* 127 F.3d at 529 (setting forth the fact that the claimant has the burden of proof at Steps One through Four).  To give Gonzales the benefit of the doubt, the Court does recognize that  Gonzales did have one IQ score within the 60 to 69 range.  Tr. 407.

Based on the foregoing, Gonzales' argument relative to the ALJ's RFC finding is without merit.

## VII. Conclusion

For the foregoing reasons, the final decision of the Commissioner denying Plaintiff Ilda S. Gonzales' application for disability insurance benefits is AFFIRMED.

Dated: March 5, 2012

Kathleen B. Burke
United States Magistrate Judge